SAM FISHER v. THE STATE.

No. 3485.   Decided December 5, 1906.

**Murder in First Degree—Manslaughter—Insulting Language—Female Relative.**

Upon a trial for murder where the testimony showed that the deceased, who was defendant's mistress, stated to defendant just before the homicide, that defendant was keeping his cousin as his mistress and giving deceased's clothes to her, etc., the court should have charged on manslaughter based upon insulting language in regard to a female relative.

Appeal from the Criminal District Court of Dallas. Tried below before the Hon. E. B. Muse.

Appeal from a conviction of murder in first degree; penalty, imprisonment for life in the penitentiary.

The opinion states the case.

No brief for appellant.

*J. E. Yantis,* Assistant Attorney-General, for the State.

DAVIDSON, Presiding Judge.—This conviction imposed upon appellant a life sentence in the penitentiary for murder in the first degree.

Among other things, the charge is criticised for its failure to submit the issue of manslaughter. Appellant's testimony shows that he had received a letter from deceased (who had been his mistress) in obedience to which he called upon her. After discussing matters growing out of a charge on her part that he had given away her clothes to other women, she named Carrie Fisher, generally called "Babe Fisher" as one of the women, who was a cousin of appellant. During the conversation she charged him directly with keeping her as his mistress, and further that appellant was giving her (deceased's) clothes to said Babe Fisher. In this connection she stated to appellant that rather than see him with any other woman she would kill him. He asked her why, and said further that she had already almost killed him,—referring to a previous difficulty in which she had stabbed him. She tendered him some whisky, which he declined. She then got up, went to the washstand, where there was a bottle of whisky and her knife. While at the washstand, she extended him an invitation to take a drink. Upon his declination, she said, "Well, I am going to kill you, if it is the last thing I do, because I would rather kill you and see you dead and in your grave than see you with any other woman." She then approached him with a black-handled knife, which he thought was the same knife she had used in the former difficulty, in which she had stabbed him; that she had previous to this occasion threatened to kill him. When she got the knife she advanced upon him, and he went backwards, toward the door, and as he states out the door, and he fired three shots, from the effect of which she died. The court did not charge upon manslaughter. The contention is, that this testimony required such a charge; that this was such insulting language in regard to a female relative as contemplated by the statute. We are of opinion that the evidence called for a charge on manslaughter and it was error to fail to give it.

The charge in regard to threats is also criticised. A general definition of the law of threats was given but no direct application of it was submitted. Upon another trial we suggest that a pertinent application of the law of threats in connection with the law of self-defense should be given the jury in the charge. The judgment is reversed and the cause remanded.

*Reversed and remanded.*